**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jorge L., File No. 26-CV-4795 (JMB/DTS)

Petitioner,

v.

Todd Blanche, *Acting Attorney General of the United States*; Markwayne Mullin, *Secretary of the Department of Homeland Security*; David Easterwood, *Field Office Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; David Venturella, *Acting Director, Immigration and Customs Enforcement, in their official capacities*, Eric Tollefson, *Kandiyohi County Sheriff*,

Respondents.

**ORDER**

---

Cameron Giebink, Wilson Law Group, Minneapolis, MN, for Petitioner Jorge L.

Derek Ganzhorn, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Easterwood, David Venturella, and Eric Tollefson.

---

This matter is before the Court on Petitioner Jorge L.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

Todd Blanche, Markwayne Mullin, David Easterwood, David Venturella, and Eric Tollefson as Respondents. (*Id.*) For the reasons explained below, the Court grants the Petition.

**FINDINGS OF FACT**

1. Jorge L. is a 38-year-old native and citizen of Venezuela. (Doc. No. 7-1 at 1.)

2. On August 24, 2024, Jorge L. was briefly detained, released, and permitted entry into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A).

3. On the same day as his arrival, the Department of Homeland Security (DHS) placed Jorge L. in removal proceedings. (*Id.* at ¶ 28.)

4. Jorge L. subsequently applied for asylum in the United States. His asylum application remains pending. (*Id.* at ¶ 27, 36.)

5. Since entering the United States, Jorge L. has attended all immigration appointments and check-ins. Jorge L.'s next check-in date is scheduled for January 4, 2027. (*Id.* at ¶ 33.)

6. Other than one minor traffic-related infraction, Jorge L. has no criminal history. (*Id.* at ¶ 35.)

7. On November 2, 2026, at approximately 8:30 a.m., Jorge L. was pulled over in Grand Forks, North Dakota by a Grand Forks Country Sheriff's deputy. The deputy did not articulate any basis for stopping him. (Pet. at ¶ 38.) The officer later reported that Jorge L. turned without using a signal. (Doc. 7-1 at 2.)

8. Within minutes, United States Border Patrol Agents arrived. (Pet. at ¶ 40.)

9. Respondent's Form I-213 record for Jorge L. states that Border Patrol Agent Loehlein "approached the vehicle and asked [Jorge L.] in Spanish what his name was, and he responded that he was [Jorge L.] and that he was from Venezuela." (Doc. No. 7-1 at 2.)

10. Loehlein then took Jorge L. into custody. (Pet. ¶ 41.) Jorge L. was not given or shown a warrant when taken into custody. (*Id.* ¶ 42.)

11. Jorge L. did not resist arrest or attempt to evade officers. (Pet. at ¶ 45.)

12. Once placed in custody, Jorge L. was transferred to the ICE Enforcement and Removal Operations (ERO) office in Grand Forks County, North Dakota. (Doc. 7-1 at 2.)

13. After arriving at the ICE ERO office, Jorge L. was then given a Form I-200 administrative warrant. The arrest warrant was not issued when Jorge L. was taken into custody because of "heavy traffic in the area." (*Id.*)

14. Attached to the Petition is a Form I-200, dated November 2, 2026, signed by "SDDO K. Wederquist," and served by Cliff Glover ("the Wederquist I-200"). (Doc. No. 1-3.) The only basis selected for the Wederquist I-200 is "the pendency of ongoing removal proceedings against the subject." (*Id.*)

15. The Wederquist I-200 is directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [Immigration and Nationality Act (INA)] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (*Id.*) The record contains no evidence concerning at what time the Wederquist I-200 was issued or served.

16. In addition to the Wederquist I-200, the record includes a second, different Form I-200, signed by Dustin Plummer, and served by Deportation Officer Johnston (the

Plummer I-200). (Doc. No. 7-2.) Contrary to the Wederquist Form I-200, the Plummer Form I-200 is not based on the pendency of removal proceedings, but instead on the "biometric confirmation of the subject's identity and a records check of federal databases" and on "statements made voluntarily by the subject to an immigration officer." (*Id.*)

17. The Plummer I-200 is also directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [Immigration and Nationality Act (INA)] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (*Id.*) The record contains no evidence concerning at what time that the Plummer I-200 was issued or served.

18. Under either the Wederquist I-200 or the Plummer I-200, Respondents detained Jorge L. pursuant to their authority under 8 U.S.C. § 1226.

19. Respondents make no mention of the Wederquist I-200, and they provide no explanation for why there are two different Form I-200s. Nevertheless, the existence of two different administrative warrants is peculiar and cannot be ignored.

20. Jorge L. was subsequently transferred to the Kandiyohi County Jail, where he remains in ICE detention. (Pet. at ¶ 51.)

21. On November 12, 2026, Jorge L. filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*See* Pet.)

22. On November 12, 2026, the Court ordered Respondents, among other things, to respond to the Petition on or before 11:00 a.m. on November 16, 2026. (Doc. No. 4.)

23. On November 16, 2026, Respondents filed a timely response to the Petition. (Doc. No. 6.)

## DISCUSSION

In his Petition, Jorge L. seeks immediate release, arguing that his detention violates the requirements of the INA and accompanying regulations, as well as the Fourth Amendment of the U.S. Constitution and the Due Process Clause of the Fifth Amendment. For their part, Respondents argue that their detention of Jorge L. comports with the requirements of due process and the terms of 8 U.S.C. § 1225(b)(2). For the reasons set forth below, the Court grants the Petition.

### A. Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).[2]

[2] To the extent that Respondents attempt to articulate a novel jurisdictional challenge based on a belief that decisions by the Attorney General concerning invocation of section 1225(b)

**B. Inapplicability of 8 U.S.C. § 1225**

It is an undisputed matter of fact that Respondents detained Jorge L. pursuant to their discretionary authority under 8 U.S.C. § 1226. Both the Wederquist and the Plummer Form I-200s were directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 1-3; Doc. No. 7-2.) In response to the Petition, however, Respondents advance a different basis for the detention of Jorge L.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention noncitizens, without any individualized determination and regardless of whether the noncitizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry); *but see Lopez Garcia v. Guadian*, 190 F.4th 305, 335 (4th Cir. 2026) (observing that Respondents' interpretation permits "[m]ass detention of marginalized individuals without due process" and "harkens back to some of the darkest moments in our country's history," when the judiciary "abdicat[ed] of its obligation to protect basic freedoms" and citing similar holdings from the First, Second, Third, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1180 (9th Cir. 2026) (rejecting

---

are unreviewable (*see* Doc. No. 6 at 4), the Court rejects this argument. There is no legal authority for such a proposition, and the argument mischaracterizes the issue presented to the Court. Jorge L. challenges the basis for his detention, not a decision by the Attorney General, and federal courts have jurisdiction to consider immigration-related habeas petitions. Finally, the argument is undermined by the facts in this case, which establish that Respondents took Jorge L. into custody based on section 1226.

Respondents' "new interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problems").

This Court concludes that Respondents cannot now change the basis for the detention of Jorge L. He was detained under section 1226 alone, and Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions. Thus, just as it is stated on the Form I-200 on which Jorge L.'s detention is based, the Court concludes that the Respondents detained Jorge L. pursuant to the framework of 8 U.S.C. § 1226. *See, e.g.*, *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

**C. Violation of Applicable Regulatory and Statutory Requirements**

Having determined that Respondents have detained Jorge L. pursuant to 8 U.S.C. § 1226, the Court considers Jorge L.'s argument whether he was brought into custody pursuant to a valid warrant or pursuant to an authorized warrantless detention. Under the INA and supporting regulations, agents may detain a non-citizen either on a valid warrant or in accordance with applicable warrantless detention procedures. 8 U.S.C. § 1357; 8 C.F.R. § 287.8(c)(2)(ii); *see also Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026). DHS's "general procedures" for all

"enforcement activities," including for the "conduct of arrests," requires that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). Here, the record shows that Respondents violated applicable regulatory and statutory requirements in at least three respects.

First, the Plummer I-200[3] is invalid because there are unverified facts to which Respondents point as their basis for establishing probable cause for taking Jorge L. into custody. The warrant relied on "biometric confirmation of the subject's identity and a records check of federal databases" and "statements made voluntarily by the subject to an immigration officer" as the determination for probable cause. (Doc. No. 7-2.) The record presented to the Court, however, includes no information concerning what records were checked, what information is being stored in those records, or how this information is collected. Therefore, Respondents have not established that this was a valid basis for the Plummer I-200. *Jaminton R.B. v. Mullin*, No. 26-CV-3091 (ECT/JFD), 2026 WL 2350324, at *2 (D. Minn. Aug. 13, 2026) (holding that a Form I-200 arrest warrant lacked probable cause because "[b]iometric confirmation involves the measurement or analysis of a unique physical or behavioral characteristic" whereas the "record contain[ed] no information showing . . . biometric confirmation of [Petitioner's] identity").

[3] For purposes of this discussion, the Court assumes without deciding that the operative Form I-200 is the Plummer I-200 provided by Respondents. Given the Court's decision, it need not address what inferences can reasonably be made from the existence of the Wederquist I-200 or whether Respondents' decision to ignore the existence of the Wederquist I-200 was a deliberate attempt to mislead the Court by the Declarant or Respondents' counsel.

Similarly, the record includes no indicia of voluntariness surrounding any statement by Jorge L. (Doc. No. 7-2.) Although the Form I-200 purports to be based on statements made by Jorge L., the record contains no evidence of Jorge L. making any statements and no evidence that Jorge L. stated he was unlawfully present in the United States. Nor does the record include evidence of any officer's Spanish fluency to communicate with Jorge L., evidence of Jorge L.'s capacity to make voluntary statements, or any evidence of other indicia of voluntariness. *See, e.g.*, *United States v. Sanchez*, 614 F.3d 876, 883 (8th Cir. 2010) (listing factors bearing on the voluntariness of a statement, including "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition"). Moreover, Respondents cite no legal authority—and the Court is aware of none—for the proposition that a statement regarding a person's country of origin alone can establish probable cause that they are in the United States unlawfully. *See, e.g.*, *United States v. Brignoni-Ponce*, 422 U.S. 873, 886 (1975) (an officer's belief of apparent ancestry is not justification for determining legal status as there are "[l]arge numbers of native-born and naturalized citizens [who] have the physical characteristics identified with [Latin American] ancestry"). Therefore, the Plummer I-200 is not valid.

Second, Respondents did not comply with the requirements of section 287.8(c)(2)(iii). That regulation provides that, "[a]t the time of the arrest," the detaining officer must do the following two things: "(A) [i]dentify himself or herself as an immigration officer who is authorized to execute an arrest; and (B) [s]tate that the person is under arrest and the reason for the arrest." *Id.* § 287.8(c)(2)(iii). There is no sworn

statement in the record that any officer identified themselves as immigration officers or informed Jorge L. that he "[wa]s under arrest and the reason for the arrest," as required by regulation. *See id.* § (c)(2)(iii). Absent such evidence, the Court concludes that Respondents violated the plain requirements of 8 C.F.R. § 287.8(c)(2)(iii).

Third, the detention preceded the issuance of a warrant, and Respondents did not comply with the requirements of a warrantless detention. The record presented establishes that Respondents took Jorge L. into custody without a warrant. (Pet. at ¶ 42.) Therefore, Respondents must establish that both requirements of 8 U.S.C. § 1357(a)(2) were satisfied. They have not done so. Under the INA, absent a valid warrant (as here), Respondents may take a person into custody if there is probable cause "to believe that the [noncitizen] so arrested is [1] in violation of any[ ] law or regulation [made in pursuance of law regulating the admission, exclusion, expulsion, or removal of noncitizens] and [2] is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); *see also* 8 C.F.R. § 287.8 (c)(2)(ii) (stating that a warrant "shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained"); *U.S. v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010) (concluding that the phrase "reason to believe" in section 1357(a)(2) means "constitutionally required probable cause").

Here Respondents argue that the second prong of section 1357(a)(2) is satisfied because Jorge L. "was clearly a risk of escape before a warrant could be issued" because "he was in an operable motor vehicle." (Doc. No. 6 at 14.) However, the Court concludes that the second prong of section 1357(a)(2) is not satisfied. The facts here are readily

distinguishable from *Quintana*, where officers had reason to believe the non-citizen was likely to escape because they were unable to verify his identity or his claims of legal entry into the United States, and where the non-citizen was suspected of a criminal drug-trafficking offense. *Id.* at 1238–41. Unlike *Quintana*, the detaining officers in this case could verify Jorge L.'s identity, and at the time of his stop, he was not suspected of having committed a crime. *See id.* at 1238. Jorge L. was cooperative, and the record contains no evidence of any conduct suggesting an intent to escape: he did not maneuver the vehicle in any way to indicate a likelihood of escape; he made no statements that could show a desire to escape; he has no history of fleeing police; he made no furtive movements or other motions consistent with an intent to escape; and took no actions that would be out of the ordinary for a garden variety traffic stop.

Absent such evidence in the record, Respondents arguments amount to a per se rule that any non-citizen who the officer believes is removable and is "in an operable motor vehicle" is necessarily likely to escape. (Doc. No. 6 at 14.) However, such a rule would effectively render the second statutory requirement of section 1357(a)(2) meaningless and, to the extent that it would justify taking all removable non-citizens into custody, it would also violate constitutional due process. *See, e.g.*, *Quintana*, 623 F.3d at 1239 (stating that "the Fourth Amendment applies to arrests of illegal [non-citizens]" and interpreting the phrase "reason to believe" in section 1357(a)(2) to mean "constitutionally required probable cause"). The facts cannot support the conclusion that officers had constitutionally required probable cause to believe Jorge L. was likely to escape.

For each of these independent reasons, the detention of Jorge L. is unlawful and immediate release is the appropriate remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."); *see also, e.g.*, *Felix Alberto J.M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *5 (D. Minn. July 2, 2026) (concluding Respondents' detention of petitioner was invalid warrantless detention and petitioner was entitled to remedy of release); *Venancio P.J.*, 2026 WL 1862252, at *3 (same); *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking, well after taking the petitioner into custody); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" when a person is taken into custody without a valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (ordering release because the Form I-200 was invalid); *Claudio A.A. v. Bondi*, No. 26-CV-742 (KMM/LIB), 2026 WL 468232, at *7 (D. Minn. Feb. 12, 2026) (concluding that failure to provide a warrant before taking a person into pursuant to section § 1226(a) is a violation of due process rights and collecting cases), report and recommendation adopted, No. 26-CV-742 (KMM/LIB), 2026 WL 478347 (D. Minn. Feb. 18, 2026); *Carlos F.P.P v. Blanche*, No. 26-CV-3123 (JWB/JFD), 2026 WL 2824801, at *7 (D. Minn. Sep. 21, 2026) (ordering release after

finding that respondents did not follow § 1357 requirements of warrantless detention and § 1225 did not "independently authorize continuation of [petitioner's] custody").[4]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Jorge L. immediately, without conditions of release, and in any event no later than 4:00 p.m. CT on November 23, 2026.

2. On or before 11:00 a.m. CT on November 24, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Jorge L.

3. On or before 11:00 a.m. CT on November 24, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77,

[4] Although the Court need not address the question whether Respondents' detention of Jorge L. violates his due process rights under the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in his favor. Jorge L. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting); the risk of erroneous deprivation through incarceration is needlessly high when available an inexpensive procedures protect against erroneous deprivations of liberty; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community like Jorge L., who had been conditionally paroled into the interior in 2024 upon a determination that he posed no such risks. Thus, Jorge L.'s ongoing detention is also unlawful for this reason. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Jorge L. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Jorge L. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 23, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court